UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOBBIE J. KERIAKIS,           )   3:14CV0122
                              )
            Plaintiff         )
                              )   JUDGE JEFFREY J. HELMICK
        v.                    )   (Mag. Judge Kenneth S. McHargh)
                              )
COMMISSIONER OF SOCIAL        )
        SECURITY ADMIN.,      )
                              )
                              )
            Defendant         )   REPORT AND
                              )   RECOMMENDATION


McHARGH, MAG. JUDGE

       This case is before the Magistrate Judge pursuant to Local Rule.  The issue

before the court is whether the final decision of the Commissioner of Social Security

("the Commissioner") denying Plaintiff Bobbie Jo Keriakis' application for

Supplemental Security Income benefits under Title XVI of the Social Security Act,

42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore,

conclusive.


I.  PROCEDURAL HISTORY

       On September 14, 2010, Plaintiff Bobbie Jo Keriakis ("Keriakis") applied for

Supplemental Security Income benefits.  (Doc. 13, Tr., at 15, 165-169.)  Keriakis

stated that she became unable to work because of her disabling condition on

January 1, 2000.  (Tr., at 15.)  Keriakis listed her physical or mental conditions that

limit her ability to work as "degenerative disc disease, bladder disease, colitis, irritable bowel syndrome, fibromyalgia, arthritis, prolapsed rectum, bowel resection." (Tr., at 190.)

Keriakis' application was denied initially and upon reconsideration.  (Tr., at 62-76, 77-92, 93-95.)  On July 14, 2011, Keriakis filed a written request for a hearing before an administrative law judge.  (Tr., at 108-110.)

An Administrative Law Judge ("the ALJ") convened a videoconference hearing on August 27, 2012, to hear Keriakis' case.  (Tr., at 31-61.)  Keriakis was represented by counsel at the hearing.  (Tr., at 33.)  Bruce S. Growick ("Growick"), a vocational expert, attended the hearing and provided testimony.  (Tr., at 33, 54-60.)

On September 25, 2012, the ALJ issued her decision applying the standard five-step sequential analysis[1] to determine whether Keriakis was disabled.  (Tr., at

---

[1]  Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  Id. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

15-26.)  Based on her review, the ALJ concluded Keriakis was not disabled.  (Tr., at 15, 26.)  Following the issuance of this ruling, Keriakis sought review of the ALJ's decision from the Appeals Council.  (Tr., at 7-11.)  However, the council denied Keriakis' request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1-6.)  Keriakis now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Keriakis briefs two legal issues:

1.  The ALJ failed to provide any explanation for why she rejected the psychological consulting examiner's mental functional capacity limitations in violation of regulation and Agency rulings.

2.  The ALJ provided no basis in evidence for rejecting Dr. Hall's sit, stand, and walk limitations in violation of regulation and Agency rulings.

(Doc. 14, at 2.)


## II.  PERSONAL BACKGROUND INFORMATION

Keriakis was born on November 28, 1967, and was 42 years old as of her application date.  (Tr., at 24, 165.)  Accordingly, Keriakis was at all times considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  Keriakis has at least a high school GED and is able to communicate in English.  (Tr., at 37, 189.)  She has no past relevant work.  (Tr., at 24.)

---

529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

### III.  MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Keriakis's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Keriakis applied for Supplemental Security Income (SSI) benefits on September 14, 2010.  (Tr., at 15, 165-169.)  Keriakis had listed the physical or mental conditions that limit her ability to work as "degenerative disc disease, bladder disease, colitis, irritable bowel syndrome, fibromyalgia, arthritis, prolapsed rectum, bowel resection."  (Tr., at 190.)

Keriakis has had a "long history of low back pain."  She had been treated, primarily with medications, by Aleksey Prok, M.D., since approximately October 2006.  See, e.g., tr., at 400-421, 428, 433-434, 439-477.  Keriakis had lumbar spine surgeries, yet reported that her back pain persisted.  See, e.g., tr., at 401-402, 419-421, 457-459, 469-474.

In December 2010, Keriakis was examined by consultative physical examiner Orin L. Hall, M.D., who completed a Social Security Disability Evaluation Report.  (Tr., at 375-382.)  Dr. Hall relied on Keriakis' recitation of her medical history for the most part.  (Tr., at 375.)  Dr. Hall noted that Keriakis reported she suffered from multiple joint pain for approximately eight years.  She reported pain in her hips, hands, knees, neck, and back.  She had surgery twice on her lower back. Keriakis reported that she had been diagnosed with arthritis in her hip, hands, and knees, as well as fibromyalgia.  She reported that pain in her knees, hip, and back caused a number of limitations:  Keriakis told Dr. Hall that she could walk for

4

approximately 100 feet before pain forced her to stop.  She said that she can stand
for approximately 10 minutes before she has to sit down, and that she can sit for
approximately 15 minutes before she has to move around.  (Tr., at 375.)

In addition to recording these self-reported symptoms, Dr. Hall performed a
physical examination of Keriakis as well (tr., at 376-377), and also had X-rays
taken, which showed moderate degenerative disk disease, associated with probably
muscular spasm (tr., at 378, 383).  Dr. Hall found that the degree of degenerative
disk space narrowing had increased since May 2004.  (Tr., at 378, 383.)

Dr. Hall reported his impressions as follows:

1.  Chronic neck, back, bilateral hips, bilateral hands, and bilateral
knee pain x8 years secondary to degenerative disk disease and
degenerative joint disease.
2.  Fibromyalgia.
3.  Irritable bowel syndrome.
4.  Interstitial cystitis.

(Tr., at 378.)  Dr. Hall noted range of motion abnormalities at the cervical and
lumbar spine.  Keriakis had a normal gait, and Dr. Hall found there were no motor,
sensory, or reflex abnormalities for any specific nerve root level, nor any evidence of
nerve root damage in the cervical spine.  Grip strength and manipulative ability of
the hands was found to be normal.  (Tr., at 378.)

Based on Dr. Hall's exam findings, he found that Keriakis

. . . should be limited to light work.  Handling objects would be normal
at both hands.  She would have difficulty with walking further than
100 feet, standing for greater than 10 minute[s], or sitting for greater
than 15 minutes at a time.  Hearing, speaking, and vision are not
affected.

5

(Tr., at 378.)

Keriakis was also referred for a psychological evaluation, which was conducted by Don McIntire, Ph.D., on February 10, 2011.  Dr. McIntire assessed Keriakis as having Panic Disorder with Agoraphobia, and Generalized Anxiety Disorder.  (Tr., at 389-394.)


## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert, Bruce S. Growick, testified that Keriakis had no past relevant work in the past fifteen years.  Keriakis clarified that she had worked as a retail clerk at a dry-cleaning establishment about 17 or 18 years ago.  (Doc. 13, tr., at 55-56.)

The ALJ posed a hypothetical question concerning an individual who is limited to light work, defined as the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, the ability to sit, stand, or walk for six hours in an 8-hour work day.  There are no limitations on the ability to push or pull within the stated weight limits.  The individual would be limited to occasional climbing of ramps and stairs, occasional climbing of ladders, ropes and scaffolds, frequent balancing, occasional stooping, frequent kneeling, and frequent crouching and crawling.  As to mental limitations, the individual is limited to static tasks without a fast pace or strict production demands.  The individual would be limited to superficial interaction with others, and settings without frequent changes.  Growick

6

was asked whether, within those hypothetical parameters, there would be work in the national economy that such an individual could perform. (Tr., at 56-57.)

Growick responded that there was SVP 1 or 2 type work. Growick's responses tended to be clipped, for example:

> Factory-based production work wherein no contact with the public, limited contact with others, reduce the numbers in terms of fast pace, but you have your classic machine tender feeder is one job. DOT code is 754.605-014, and it's at the light level, SVP: 2, 3,200, I've reduced that from about a third because of eliminating fast-paced work. Also a person could do some assembly-type work, also factory-based, limited contact with others, limited contact with others, SVP: 2. DOT code is 706.624-034, about 2,600 in the light level. I've reduced that by a third as well. For state and national figures, multiply the local number by 16 for the state and 256 for the nation. And lastly a person could do some quality-assurance, inspecting-type jobs. These are light, SVP: 2, 726.685-030, only about 8, 900 of those. Reduce it by a third again, multiply by 16 for the state, 256 for the nation. That would be three potential jobs within that hypothetical taking into account exertion skill and dates of employment.

(Tr., at 57.)

The ALJ clarified with Growick that his one-third reductions were based on his prior experience in the field, and limitations set forth in the RFC: "fast pace, no quotas, . . . static environment." (Tr., at 58.)

The ALJ next modified the hypothetical, and asked the vocational expert to assume again a limitation to light work, as defined in the DOT. This hypothetical individual would be limited to walking no more than 100 feet at a time, standing for no more than 10 minutes at one time or sitting for no more than 15 minutes at one time. (Tr., at 58.) The ALJ continued, "for the posturals on this plan, all are occasional except no ladders, ropes or scaffolds and the same mental limitations as

in hypothetical number one." (Tr., at 59.)  The ALJ asked the VE if there would be work that such an individual could perform.  Growick answered, no, "not in a competitive environment.  It would have to be an accommodated position." (Tr., at 59.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since August 25, 2010, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments:  lumbar degenerative disc disease and anxiety (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F. R. 416.967(b) except that the claimant is limited to frequent balancing, kneeling, crouching, crawling and occasional stooping, and climbing of stairs, ladders, ropes, and scaffolds.  The claimant is additionally limited to static tasks in work environments without frequent changes or fast-pace or strict production demands, and with superficial interpersonal interactions.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on November 28, 1967, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since August 25, 2010, the date the application was filed (20 CFR 416.020(g)).

(Doc. 13, tr., at 17-19, 24-26.)

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402

9

U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983). This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).


## VIII. ANALYSIS

### A. Mental Functional Capacity Limitations

The first issue raised by Keriakis is:

The ALJ failed to provide any explanation for why she rejected the psychological consulting examiner's mental functional capacity limitations in violation of regulation and Agency rulings.

10

(Doc. 14, at 2.)

In her SSI application, Keriakis listed her conditions that limit her ability to work as "degenerative disc disease, bladder disease, colitis, irritable bowel syndrome, fibromyalgia, arthritis, prolapsed rectum, bowel resection," without mentioning any psychological issues.  (Tr., at 190.)  At the hearing, however, the ALJ asked Keriakis, "Now what prevents you from working today?  Why do you feel you can't work?"  (Tr., at 38-39.)  She responded,

> I have bladder leaks, so I have accidents.  I have pain all the time.  As soon as I eat, I'm nauseous.  Just chronic pain, depression.  I hate being around people.  I get all panicky.  My heart gets real fast.  I can't be anywhere by myself, so I just – I honestly in my heart do not feel like I could do any job any more.

(Tr., at 39.)

Her attorney elicited testimony from Keriakis that she believes "panic disorder and anxiety disorder" affect her ability to interact with others.  (Tr., at 48.)  Keriakis described having a racing heart, sweaty palms "and just pure anxiety" any time she is around "anybody other than [her] husband."  (Tr., at 49.)  She testified that she does not have any other symptoms relating to anxiety disorder.  Id.

Her attorney also asked whether her mental health conditions affected her mood, and she replied that she had a lot of depression because "the pain is control of my life and I feel like I'm not."  (Tr., at 49.)  She claimed to forget things easily, and that she had trouble with remembering, and concentrating.  Id.

The Commissioner points out Keriakis' lack of psychological treatment.  (Doc. 17, at 10.)  The ALJ had stated, in her decision:

11

> Despite allegations of severe anxiety, there is no indication that the claimant has ever sought psychological treatment.  She noted in February of 2011 that she had never received counseling or psychotropic medication for her reported anxiety.  With the exception of the consultative examination performed at the best of the Disability Determination Service, there are no psychiatric treatment or evaluation records contained within the medical record through the date of hearing in August of 2012.

(Tr., at 22.)

Keriakis was referred for a psychological evaluation, which was conducted by Don McIntire, Ph.D., on February 10, 2011.  (Tr., at 389-394.)  Dr. McIntire assessed Keriakis as having Panic Disorder with Agoraphobia, and Generalized Anxiety Disorder.  Dr. McIntire assigned her a Symptomatic GAF of 51, "based on anxiety and self-consciousness when in public."  She was assigned a Functional GAF score of 58, "based on good ADLs and ability to maintain a relationship."  (Tr., at 393.)

Dr. McIntire discussed four work-related mental abilities.  He found that Keriakis' ability to work around others was "markedly impaired as she has panic symptoms when in public."  Dr. McIntire found that Keriakis' ability to understand, remember and follow instructions is mildly impaired, specifically as to lengthy, detailed, or complicated instructions.  But her ability to follow simple instructions is unimpaired.  (Tr., at 393-394.)

In addition, Dr. McIntire found that Keriakis' ability to maintain attention and concentration to perform tasks is moderately impaired.  Her ability to complete simple repetitive tasks in mildly impaired.  Finally, Dr. McIntire stated that

Keriakis' "ability to manage the emotional stress of everyday work life is markedly impaired by her anxiety as she has panic attacks when in public or when stressed." (Tr., at 394.)

The ALJ discussed the consultation with Dr. McIntire in her decision, as follows, in part:

> She indicated that her previous marriage was abusive, but that she had never sought psychological treatment or psychotropic medication for her reported anxiety.  The claimant endorsed a number of anxiety symptoms, including some memory deficits, although she denied any psychotic symptoms.  . . . Dr. McIntire assessed the claimant with panic disorder with agoraphobia and generalized anxiety disorder.

(Tr., at 22.)  The ALJ continued with a general assessment of her medical conditions, and stated that "the medical record and claimant testimony does not lend support [to her] assertions of disabling conditions."  (Tr., at 22.)

The ALJ noted, for example, that Keriakis had not visited the emergency department for complaints of pain.  (Tr., at 23.)

> Additionally, medical evidence and claimant testimony indicate that the claimant does not seek treatment and is not medicated for her allegedly debilitating anxiety.  The claimant's conservative care, with evidence of noncompliance, suggests that her symptoms may not be as serious as has been alleged in connection with this application and appeal.

(Tr., at 23.)

As the basis for the residual functional capacity finding, the ALJ assigned "some weight to the opinions of Drs. McIntire and Hall, the psychological and medical consultative examiners from the Disability Determination Service."  (Tr., at

13

24.)  The ALJ's explanation for the weight assigned to Dr. McIntire was limited to

the following:

> Dr. McIntire opined that the claimant suffered marked limitations in
> her ability to relate to others and withstand stress, as well as
> moderate limitations in her ability to maintain attention. * * * * * The
> undersigned finds that these assessments are generally consistent
> with the medical evidence of record, and has given these opinions some
> weight to the extent that they are consistent with the established
> residual functional capacity finding noted above.

(Tr., at 24.)

The ALJ's RFC psychological findings were "based in large part" on the

opinion of Dr. Goldsmith, the psychological consultant from the Disability

Determination Service.  The ALJ stated:  "Dr. Goldsmith opined that the claimant

remained capable of static tasks, in work environments without fast-paced or strict

production requirements, and with superficial interpersonal contact."  Dr.

Goldsmith's opinion was "consistent with the claimant's reported . . . mental

symptoms, and allow for some symptom interference," thus it was accorded "great

weight."  (Tr., at 24.)

Keriakis complains that the ALJ rejected the only examining mental health

source in the record, without providing any meaningful explanation as to why she

had done so.  Keriakis alleges that this violated 20 C.F.R. § 416.927(c) and SSR 96-

6p.  (Doc. 14, at 8.)

Keriakis points out that Dr. McIntire examined Keriakis and offered his

opinion of her mental functional capacity limitations (noted earlier) based on his

examination and a review of her file.  (Doc. 14, at 9.)  Keriakis states that the VE

14

testified that an individual who would be off-task up to 20% of a work day would be unemployable. (Doc. 14, at 9, citing tr., at 60.) She argues that the assessment of Todd Finnerty, Psy.D., who reviewed her file in February 2011, also supports that Keriakis would be off-task at least 20% of a work day. (Doc. 14, at 9-10, 6.)

Keriakis notes that Dr. McIntire's opinion was the sole examining mental health opinion in the record, and it was thus entitled to the greatest deference. The only other mental health opinions of record were the opinions of the non-examining state agency reviewers, Drs. Finnerty and Goldsmith. Because Dr. McIntire was the only examining source opinion in the record, Keriakis contends his opinion should have been presumptively entitled to greater deference than the non-examining opinions. (Doc. 14, at 10, citing 20 C.F.R. § 416.927(c) and SSR 96-6p.) Keriakis argues that, without some reasonable explanation, the ALJ's finding that the agency reviewer Dr. Goldsmith's opinion should be assigned greater weight than Dr. McIntire's is error. Keriakis believes that the ALJ failed to provide any meaningful explanation for the weight(s) assigned. (Doc. 14, at 10-11.)

Keriakis contends there was no logical reason to provide Dr. McIntire's opinion weight only to the extent it was consistent with the RFC finding, because it was the opinion entitled to the most deference. She says the only comment the ALJ made in relation to Dr. McIntire's opinion was that it was generally consistent with the medical record. (Doc. 14, at 11.) Keriakis argues that the ALJ failed to meet the requirements of SSR 96-8p, which requires the ALJ to explain, where the RFC

15

conflicts with a medical source opinion, why the opinion was not adopted.  (Doc. 14, at 12, quoting SSR 96-8p.)

Keriakis also points to evidence in the record which she contends demonstrates that the ALJ misinterpreted the evidence concerning her social functioning, as well as her ability to concentrate, persist, and keep pace.  (Doc. 14, at 13-15.)  She states that the ALJ's overall analysis of the mental health evidence is insufficient and should be reversed and remanded.  Id. at 15.

The Commissioner responds that the ALJ properly weighed the opinion of the consultative examining psychologist Dr. McIntire.  (Doc. 17, at 7-11.)  The Commissioner contends that the ALJ considered the record as a whole, and properly followed the regulations in weighing Dr. McIntire's opinion.  (Doc. 17, at 7, citing 20 C.F.R. § 416.927(c).)

The Commissioner posits that Dr. McIntire's opinions are unsupported by his own consultative exam (doc. 17, at 8), but whatever the merit of that argument, this reasoning is not to be found in the ALJ's decision.  "A fundamental rule of administrative law is that a reviewing court must judge the propriety of the action solely on the grounds invoked by the agency."  Roper v. Secretary, HHS, 769 F.Supp. 243, 247 (N.D. Ohio 1990) (citing SEC v. Chenery, 332 U.S. 194, 196 (1947)).  The court may not rely on counsel's ad hoc rationalizations.  May v. Astrue, No. 4:10CV1533, 2011 WL 3490186, at *9 (N.D. June 1, 2011); Roper, 769 F.Supp.

16

at 247.  The decision must be evaluated on the basis articulated by the ALJ.  Roper, 769 F.Supp. at 247.

The Commissioner also contends that the consultative psychological assessment by Dr. Goldsmith supported the ALJ's decision.  (Doc. 17, at 8-9.)  The Commissioner states, for example, "Dr. Goldsmith also explained that Dr. McIntire's opinions were given partial weight and that his opinion that [Keriakis] was markedly impaired in social interaction was not supported by the totality of the evidence."  (Doc. 17, at 9, citing tr., at 86.)  Again, the ALJ did not address, in her decision, Dr. Goldsmith's assessment of Dr. McIntire's opinions concerning impairments in social interaction as a reason why she might have given less weight to Dr. McIntire's opinion than it was presumptively entitled to, that is, greater deference than the non-examining opinion of Dr. Goldsmith.

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.  The court finds merit in the contention that the ALJ failed to provide an explanation for why she rejected the psychological consulting examiner Dr. McIntire's mental functional capacity limitations.  The court finds that the decision of the Commissioner on this issue is not supported by substantial evidence.

### B.  Sit, Stand, and Walk Limitations

The second issue raised by Keriakis is:

> The ALJ provided no basis in evidence for rejecting Dr. Hall's sit, stand, and walk limitations in violation of regulation and Agency rulings.

(Doc. 14, at 2.)

Keriakis claims that the ALJ did not provide substantial evidence to support her finding that Dr. Hall's sitting, standing, and walking limitations were inconsistent with Dr. Hall's own examination and the rest of the medical evidence of record.  (Doc. 14, at 16.)  State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must explain any rejection of the state-agency doctor's opinions.  20 C.F.R. §§ 416.927(c)(1), (e)(2)(i) and (ii); SSR 96-8p.

The ALJ's RFC medical findings were "based in large part" on the opinion of Dr. Caldwell, the medical consultant from the Disability Determination Service. The ALJ stated:  "Dr. Caldwell opined that the claimant that the claimant was capable [of] light exertional level work with some postural limitations."  Dr. Caldwell's opinion was "consistent with the claimant's reported physical . . . symptoms, and allow for some symptom interference," thus it was accorded "great weight."  (Tr., at 24.)

As the basis for the residual functional capacity finding, the ALJ only assigned "some weight" to the opinion of Dr. Hall, the medical consultative examiner from the Disability Determination Service.  (Tr., at 24.)  The ALJ's explanation for the weight assigned to Dr. Hall was the following:

Dr. Hall opined that the claimant was able to lift up to light exertional requirements, but had significant limitations in her ability to sit, stand or walk.  The undersigned finds that these assessments are generally consistent with the medical evidence of record, and has given these opinions some weight to the extent that they are consistent with the established residual functional capacity finding noted above.  Notably, however, the remainder of the medical evidence, including Dr. Hall's physical examination, fails to support the identified limitations in sitting standing and walking.

(Tr., at 24.)

As discussed earlier, after examination, Dr. Hall had found that Keriakis

. . . should be limited to light work.  Handling objects would be normal at both hands.  She would have difficulty with walking further than 100 feet, standing for greater than 10 minute[s], or sitting for greater than 15 minutes at a time.  Hearing, speaking, and vision are not affected.

(Tr., at 378.)

Keriakis argues that Dr. Hall's examination did in fact support his findings, and that the ALJ's findings on the remainder of the medical record were incorrect and therefore not substantial evidence.  (Doc. 14, at 16.)  Keriakis contends that the ALJ's failure to afford proper deference to Dr. Hall's opinion is prejudicial error because, according to the VE's testimony, an individual with the sitting, standing, and walking limitations at issue would be disabled.  (Doc. 14, at 16, citing tr., at 58.)

Keriakis points to Dr. Hall's findings of diffuse tenderness and limited range of motion in her cervical and lumbar spine, as support for his findings of limitations on sitting, standing, and walking.  (Doc. 14, at 16, citing tr., at 377, 380-381.)  She also states that the X-rays indicated degenerative disc disease.  (Doc. 14, at 16,

19

citing tr., at 382.)  Also, Keriakis had tenderness in her hands, knees and shoulders on examination.  (Doc. 14, at 16, citing tr., at 377.)

The Commissioner responds that Keriakis ignores that the ALJ considered the medical evidence in weighing Dr. Hall's opinions.  The ALJ stated that the medical evidence failed to support Dr. Hall's limitations, and that Dr. Hall's own physical exam did not support the limitations.  (Doc. 17, at 11.)  The Commissioner points to Dr. Hall's observation (noted in the ALJ decision) that Keriakis had a normal gait, and no difficulties with postural changes.  (Doc. 17, at 11, citing tr., at 22, 378.)  The ALJ also referred to Dr. Hall's finding that Keriakis had normal range of motion in all planes, except for motion abnormalities in the cervical and lumbar spine.  The exam showed spinal tenderness, but normal strength and sensation.  (Doc. 17, at 11, citing tr., at 22, 377-378.)

Keriakis also argues that the ALJ erred in concluding that Dr. Hall's proposed limitations were inconsistent with the remainder of the medical evidence.  (Doc. 14, at 16.)  As one example, Keriakis believes that "the ALJ stated at one point that Ms. Keriakis had two prior back surgeries, and then later, in the same paragraph, claimed that she had no surgeries whatsoever.  Both of these findings were incorrect.  Ms Keriakis had 3 prior surgical interventions on her back."  (Doc. 14, at 17, citing tr., at 21, 313.)

The court does not read the ALJ's decision in the same way.  In referring to Keriakis' prior back surgeries, the ALJ was specifically discussing "complaints of back pain, purportedly stemming from two remote spinal surgeries."  (Tr., at 21.)

20

The ALJ is not saying, in that sentence, that Keriakis only had two surgeries,

merely that she was asserting that her pain arose in part from those surgeries.

There is evidence in the record to support the ALJ's statement that Keriakis

"repeatedly declined interventions designed to alleviate her symptoms, including

bladder and back surgeries, stating that she was without financial resources to

undergo any procedures." (Tr., at 21.)  Pointing out that Keriakis declined

additional surgery is not the same as saying Keriakis never had surgery.  Dr. Prok's

progress notes of December 2010, January 2011, March 2011, and May 2011, for

example, all contain notations to the effect that Keriakis said she "cannot afford any

procedures."  See, e.g., tr., at 403, 413, 416, 419.

Nonetheless, Keriakis contends that the ALJ discounted her credibility, at

least in part because she declined additional intervention[2].  (Doc. 14, at 17.)

Keriakis does not point to an explicit finding on her credibility, other than by

implication.  The ALJ's finding that her "history of sparse, largely conservative

treatment does not support allegations of disabling conditions" is not based solely

on her declining to undergo further surgery, however.  See generally tr., at 21-23

(Keriakis "has not received the type of medical treatment one would expect for a

totally disabled individual").  The ALJ found that Keriakis "received very

infrequent primary care through a local health clinic catering to the indigent," and

---

[2]  Keriakis claims that, despite her previous surgeries and continuous medication with pain killers,
she has "experienced only some relief."  (Doc. 14, at 17.)

that she testified that "despite availability of low cost medical care, she has not sought regular primary care services." (Tr., at 21.)

The ALJ did consider "various inconsistent statements" contained within the medical records and hearing testimony.  For example, the ALJ pointed out that while Keriakis testified she has to take bathroom breaks every half hour, she told Dr. Prok in May 2011 that she was able to work without requiring breaks.  The ALJ explained that, although the inconsistent information "may not be the result of a conscious intention to mislead, nevertheless the inconsistency suggests that the information provided by the claimant generally may not be entirely reliable." (Tr., at 23.)  The ALJ found that the record demonstrated that Keriakis "was able to work, despite the fact that her allegedly disabling impairments were present at approximately the same level of severity." (Tr., at 23.)

While it is a closer question than the psychological aspect discussed in the previous section, the court finds that the ALJ's decision concerning the weight assigned to Dr. Hall's opinion is adequate, and that the ALJ's decision concerning that issue is based on substantial evidence in the record, as supported by medical evidence.

## IX.  SUMMARY

The undersigned finds merit in the first issue, the contention that the ALJ failed to provide an explanation for why she rejected the psychological consulting examiner Dr. McIntire's mental functional capacity limitations.  The court finds

22

that the decision of the Commissioner on this issue is not supported by substantial evidence, and recommends remand for a fuller explication.

As to the second issue raised by Keriakis, the undersigned finds that the ALJ's decision concerning the weight assigned to Dr. Hall's opinion is adequate, and that the ALJ's decision concerning the issue of Dr. Hall's sit, stand, and walk limitations is based on substantial evidence in the record, as supported by medical evidence.

## X. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **VACATED** and the case be **REMANDED** back to the administration.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date:  Dec. 17, 2014.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate

Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).